**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CLEMENT GAZZILLO, STEVEN WU, JAMES RENSLAND, and BARBARA MORRIS,** *on behalf of themselves and all others similarly situated,*

**Plaintiffs,**

**vs.**

**PLY GEM INDUSTRIES, INC.,** *d/b/a "Ply Gem"* **and PLY GEM HOLDINGS, INC.,** *d/b/a "Ply Gem,"*

**Defendants.**

**1:17-CV-1077 (MAD/CFH)**

_____

**APPEARANCES:**

**BENSON, KERRANE, STORZ & NELSON, PC**
110 North Rubey Drive, Suite 200
Golden, Colorado 80403
Attorneys for Plaintiffs

**DREYER, BOYAJIAN LAW FIRM**
75 Columbia Street
Albany, New York 12210
Attorneys for Plaintiffs

**GREENBERG TRAURIG, LLP**
54 State Street, 6th Floor
Albany, New York 12207
Attorneys for Defendants

**PIERCE ATWOOD LLP**
100 Summer Street
Boston, Massachusetts 02110
Attorneys for Defendants

**PIERCE ATWOOD LLP**
Merrill's Wharf
254 Commercial Street
Portland, Maine 04101
Attorneys for Defendants

**PIERCE ATWOOD LLP**
One Financial Plaza

**OF COUNSEL:**

**ALEX M. NELSON, ESQ.**
**MICHAEL J. LOWDER, ESQ.**

**DONALD W. BOYAJIAN, ESQ.**
**JAMES R. PELUSO, JR., ESQ.**

**CYNTHIA E. NEIDL, ESQ.**

**DONALD R. FREDERICO, ESQ.**

**KATHERINE SWIFT KAYATTA, ESQ.**

**CHERYL LORRAINE, ESQ.**
**ALLEN-RICCIARDI, ESQ.**

Providence, Rhode Island 02903                    **KATHARINE E. KOHM, ESQ.**
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs commenced this proposed putative class action against Ply Gem Industries, Inc.

and Ply Gem Holdings, Inc. on September 26, 2017, alleging that Defendants manufactured and

distributed defective vinyl siding. *See* Dkt. No. 1 at ¶ 2. Plaintiffs bring causes of action for

breach of an express warranty and implied warranties in violation of New York, Pennsylvania and

Delaware law,[1] and "other similar statutes." *See id.* at ¶¶ 105-142. Additionally, Plaintiffs allege

that Defendants have breached the implied covenant of good faith and fair dealing and have

engaged in deceptive and unfair trade practices in violation of New York, Pennsylvania and

Delaware law,[2] and "other similar statutes." *See id.* at ¶¶ 143-157. Plaintiffs also allege that

Defendants engaged in false advertising in violation of New York General Business Law § 350

"and other similar state statutes," and that Defendants have been unjustly enriched. *See id.* at ¶¶

158-171. Plaintiffs request restitution and declaratory and injunctive relief. *See id.* at ¶¶ 172-

177.

Presently before the Court is Defendants' Motion to Dismiss for lack of personal

jurisdiction and for failure to state a claim. *See* Dkt. No. 28-1. For reasons set forth below, the

Complaint is dismissed for lack of personal jurisdiction.

---

[1] Specifically, Plaintiffs allege violations of New York Uniform Commercial Code §§ 2-313, 2-314, 2-315; Pennsylvania's Statutes and Consolidated Statutes §§ 2313-2315; and Delaware Uniform Commercial Code §§ 2-313, 2-314, 2-315.

[2] Specifically, Plaintiffs allege violations of New York General Business Law § 349; 73 P.S. § 201-3; and 6 Del. C. § 2513.

## II. BACKGROUND

**A.     Facts**

### 1. Ply Gem

Plaintiffs allege that Ply Gem Industries, Inc. is a wholly owned subsidiary of Ply Gem Holdings, Inc.[3]  *See id.* at ¶ 21.  Both Defendants are registered in Delaware and share their corporate headquarters in Cary, North Carolina.  *See id.* at ¶¶ 13-14, 27.

Defendants, who are "one of North America's largest building products companies," allegedly "manufactured and distributed defective vinyl siding under various brand names that degrades when exposed to normal environmental and building construction conditions."  *See id.* at ¶¶ 2, 28.  According to Plaintiffs, Defendants "marketed, promoted and sold Ply Gem vinyl siding, including the Ply Gem lifetime warranty, when they knew or should have known that the siding was defective."  *See id.* at ¶ 6.  Defendants allegedly marketed its siding to "consumers and the general public, including plaintiffs and the Class."  *See id.* at ¶ 30.  Finally, the Complaint alleges that "defendants conduct substantial business in this District . . . and defendants are subject to this court's personal jurisdiction with respect to this action."  *See id.* at ¶ 16.

### 2. Promotional Materials

The Complaint extracts numerous quotes from brochures, the Ply Gem website, and other promotional materials.  *See id.* at ¶¶ 30-37.  These advertisements contain puffed up phrases that generally tout the excellence of Ply Gem as a company and the quality of the vinyl siding products in particular.  *See e.g., id.* at ¶ 30 ("Ply Gem markets its vinyl siding products . . . as the '# 1 Manufacturer of Vinyl Siding in North America'"); *id.* at ¶ 33 ("Defendants represented that

---

[3] Plaintiff uses "Ply Gem" to represent both Defendants, without distinguishing between Ply Gem Industries, Inc. and Ply Gem Holdings, Inc.  *See* Dkt. No. 1 at ¶ 1.  The Court assumes that the allegations against "Ply Gem" in the Complaint are against both companies.

Ply Gem 'Vinyl siding's durable design provides lasting beauty and comprehensive protection you can trust for the life of your home.'"); *id.* at ¶ 36 ("Defendants market their vinyl siding products with 'The Ply Gem Promise' which states that Ply Gem vinyl siding products are 'backed by Ply Gem – a 70 year leader in pioneering performance home exteriors, with superior warranty for exactly the home you want for decades to come'").

### 3. The Warranty

The Complaint also makes allegations about the siding's warranty coverage. *See id.* at ¶¶ 38-42. Defendants allegedly warrant that "Ply Gem siding is free from manufacturing defects and will maintain its structural integrity, including protection from peeling, flaking, blistering, corroding and excessive fading under normal exposure and weathering conditions." *See id.* at ¶ 38. The warranty is a lifetime warranty that is transferable to subsequent owners as a prorated 50 year warranty measured from the date of first installation. *See id.* at ¶¶ 40-41.

### 4. The Injuries

The Complaint contains photographs of "degraded Ply Gem vinyl siding" on Gazzillo's home, Wu's home, and Rensland's home. *See id.* at ¶¶ 3-5. The Complaint also alleges that, now and at all times relevant, Clement Gazzillo has been a resident of Rotterdam, New York; Steven Wu has been a resident of Williamsville, New York; James Rensland has been a resident of Pittsburgh, Pennsylvania; and Barbara Morris has been a resident of the Millville, Delaware. *See id.* at ¶¶ 9-12. Presumably the homes in question are located in the towns where each Plaintiff is a resident.

The Complaint alleges that Plaintiffs each submitted a warranty claim to Ply Gem about their vinyl siding, and each claim was denied. *See id.* at ¶ 54; *id.* at ¶¶ 65-68 (denying Gazzillo's warranty claim on the grounds of "excessive external heat source" on the siding); *id.* at ¶ 56; *id.* at

¶ 70 (denying Wu's warranty claim on the grounds of "solar deflection" from window reflection); *id.* at ¶ 58; *id.* at ¶ 72 (denying Rensland's warranty claim on the grounds of "excessive external heat source" on the siding); *id.* at ¶ 60; *id.* at ¶¶ 74-77 (denying Morris' warranty claim on the grounds of "excessive external heat source" on the siding).

Plaintiffs allege that "Ply Gem's denial that its vinyl siding is defective as a result of warping or distortion from sunlight reflecting off windows or other building materials fails the essential purpose of the warranty, i.e., that the siding is free from defects under normal exposure conditions." *See id.* at ¶ 66. Furthermore, Plaintiffs allege that the construction of windows adjacent to siding and the use of siding where it will be exposed to sunlight, is "a reasonable expectation of property owners . . . and a normal condition in building design and construction." *See id.* at ¶¶ 68-72. Plaintiffs believe that Defendants' advertising, warranting, and selling of Ply Gem vinyl siding products, as well as failure to warn consumers about defective products, is deceptive and unfair trade conduct and a "breach of warranties." *See id.* at ¶¶ 75-83.

**B.**     **Procedural History**

Plaintiffs filed a Complaint against Defendants on September 26, 2017. *See* Dkt. No. 1. On March 2, 2018, Defendants filed a Motion to Dismiss for lack of personal jurisdiction and failure to state a claim. *See* Dkt. No. 28. Plaintiffs filed an Opposition to the Motion to Dismiss on March 19, 2018, and Defendants filed a Reply. *See* Dkt. Nos. 32, 34.

### III. DISCUSSION

**A.**     **Standard of Review**

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson-Ceco*

*Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction. *See id.* (citing *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)); *see also* Fed. R. Civ. P. 11. That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) (citation omitted); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence of jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quotation omitted). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (quotation omitted). Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, *see Ball*, 902 F.2d at 197, it should "not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

The Complaint states that "defendants conduct substantial business in this District, have caused harm to Class Members in this District, one or more of the Plaintiffs reside in this District, and defendants are subject to this court's personal jurisdiction with respect to this action." *See* Dkt. No. 1 at ¶ 16. The Complaint also shows photographs of degraded Ply Gem siding on three

of the Plaintiffs' homes, two of which are likely located in New York and one of which is likely located in Pennsylvania.  *See id.* at ¶¶ 3-5, 9-12.  Finally, the Complaint alleges that Mr. Wu's vinyl siding was installed on his home in 2010.  *See id.* at ¶ 47.  The Complaint contains no other allegations that connect Defendants to the State of New York.

## B.    Application

Federal courts engage in a two-step inquiry in order to determine whether they may exercise personal jurisdiction over a foreign defendant.  "First, we look to the law of the forum state to determine whether personal jurisdiction will lie.  If jurisdiction lies, we consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citation omitted).

There are two types of personal jurisdiction that a court may exercise over a foreign corporation.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  First, there is general (or "all-purpose") jurisdiction, which "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff."  *Id.*  Second, there is specific (or "case-linked") jurisdiction, which "is available when the cause of action sued upon arises out of the defendant's activities in a state."  *Id.*

### *1. General Jurisdiction*

A court may assert general jurisdiction over a foreign corporation only where the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).  Furthermore, *Daimler* "established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal

place of business." *Lockheed Martin Corp.*, 814 F.3d at 627 (citing *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39-41 (2d Cir. 2014)). Here, Defendants are incorporated in Delaware and share a principal place of business in North Carolina. *See* Dkt. No. 1 at ¶¶ 13-14. Plaintiffs do not argue that this Court has general jurisdiction over Defendants, and there is nothing in the Complaint to suggest that Defendants are "at home" in New York. Therefore, the Court cannot exercise general jurisdiction over Defendants.

### 2. *Specific Jurisdiction*

Federal Rule of Civil Procedure 4(k)(1)(A) permits a federal court to "look to the long-arm statute of the State in which it sits to establish a statutory basis for the exercise of personal jurisdiction over a defendant." *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 18 (E.D.N.Y. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). If the long-arm statute permits personal jurisdiction, courts then assess whether personal jurisdiction comports with constitutional due process protections. *Licci ex rel. Licci*, 732 F.3d at 168.

New York's long-arm statute allows for personal jurisdiction by acts of non-domiciliaries where the non-domiciliary, "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . .; or (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a). (McKinney).

Plaintiffs do not specify which provisions of the long-arm statute grant them specific jurisdiction over their claims. In fact, Plaintiffs do not actually provide the Court with an argument for why the Court has personal jurisdiction in this case, beyond making the conclusory statement that "defendants conduct substantial business in this District, have caused harm to Class Members in this District, one or more of the Plaintiffs reside in this District, and defendants are subject to this court's personal jurisdiction with respect to this action." *See* Dkt. No. 1 at ¶ 16. Even Plaintiffs' Opposition to the Motion to Dismiss does not make a proper personal jurisdiction analysis.[4] In spite of these deficiencies, the Court has reviewed the facts alleged in the Complaint and the relevant CPLR provisions, and has concluded that it does not have specific jurisdiction over Defendants.

(a) CPLR §§ 302(a)(1)

"'To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.'" *Licci ex rel. Licci*, 732 F.3d at 168 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). "For a cause of action to arise from the defendant's business transaction in the state, there must be 'an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Deitrick v. Gypsy Guitar Corp.*, No. 16-CV-616, 2016 WL 7494881, *5 (S.D.N.Y. Dec. 28, 2016) (quoting *Saudi v. Marine Atl., Ltd.*, 306 Fed. Appx. 653, 654 (2d Cir. 2009)).

---

[4] The Opposition spends four pages on the jurisdictional issue in which it argues against applying *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) to class actions brought in federal court and points out the lack of federalism concerns in this case. *See* Dkt. No. 32-1 at 2-5. The Opposition never analyzes personal jurisdiction under N.Y. C.P.L.R. § 302(a).

Under Section 302(a)(1), "'jurisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016), *reargument denied sub nom. Rushaid v. Pictet & Cie*, 28 N.Y.3d 1161 (2017) (citing *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg*, 9 N.Y.3d at 380 (citations omitted). Determining purposeful availment requires the Court to make an objective inquiry by "closely examin[ing] the defendant's contacts for their quality." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012). A "single act" or transaction "is sufficient to invoke jurisdiction," so long as the relevant New York activities "were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 52 (2d Dep't 2016) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

Plaintiffs broadly allege that "defendants conduct substantial business in this District . . . and defendants are subject to this court's personal jurisdiction with respect to this action." *See* Dkt. No. 1 at ¶ 16. This conclusory allegation does not provide the Court with facts that show Defendants' purposeful availment of New York. *See Jazini*, 148 F.3d at 185 (holding that "conclusory non-fact-specific jurisdictional allegations" and "legal conclusion couched as a factual allegation" do not meet the burden of a prima facie showing of jurisdiction). Additionally, the Complaint cites to numerous marketing materials and warranties that are available on Defendants' website. *See* Dkt. No. 1 at ¶¶ 30-42. These materials provide information to a national audience; they do not show that the Defendants purposefully availed themselves of the

privilege of conducting activities within New York State specifically. "[P]assive websites . . . which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (collecting authority). The mere fact that Plaintiffs may have viewed these promotional materials in New York is insufficient to establish personal jurisdiction over Defendants under Section 302(a)(1).

The only alleged acts that focus on New York are the reply letters that Defendants sent to New York residents Gazzillo and Wu to deny their warranty claims. *See* Dkt. No. 1 at ¶¶ 65-68, 70. Contact with the forum state that is "responsive in nature" is "not the type of interactions that demonstrate the purposeful availment necessary to confer personal jurisdiction over . . . out-of-state defendants." *Paterno*, 24 N.Y.3d at 378 (finding that telephone calls and emails sent in response to the plaintiff's online inquiry were not purposeful availment because they were "responsive in nature"). Reviewing the content and quality of Defendants' contacts, the Court finds that Defendants did not purposefully avail themselves of New York when they sent reply letters to the New York residents that merely responded to warranty claims. As such, the Court does not have personal jurisdiction over Defendants under Section 302(a)(1).

(b) CPLR § 302(a)(2)

Under CPLR § 302(a)(2), the court has personal jurisdiction if the defendant commits a tortious act within the state. A "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999); *see also Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803 (S.D.N.Y. 2015) (remarking that "the Second Circuit continues to adhere to the traditional,

stricter rule . . . requiring the defendant to physically commit the tortious act within New York"),

*aff'd*, 660 Fed. Appx. 43 (2d Cir. 2016).

The Complaint does not make any allegations that Defendants were physically present in

New York when Plaintiffs' causes of action arose, and the Court will not draw "argumentative

inferences" in Plaintiffs' favor. *See Atl. Mut. Ins. Co.*, 968 F.2d at 198. Therefore, the Court does

not have personal jurisdiction under CPLR § 302(a)(2). *Richards v. Johnson & Johnson, Inc.*,

No. 517-CV-00178, 2018 WL 4214357, *5 (N.D.N.Y. Mar. 30, 2018) (denying jurisdiction under

Section 302(a)(2) where the plaintiff had not alleged that the defendant sold or manufactured his

goods in New York).

(c) CPLR § 302(a)(3)

To establish personal jurisdiction under CPLR § 302(a)(3), a plaintiff must show that (1)

the defendant committed a tortious act outside New York; (2) the cause of action arose from that

act; (3) the tortious act caused an injury to a person or property in New York; and (4) the

defendant (a) regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered in

New York or (b) expects or should reasonably expect the act to have consequences in the state

and derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. §

302(a)(3); *see also Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

To determine whether an injury occurred within the state, New York courts apply the

"situs-of-injury test, which asks them to locate the 'original event which caused the injury.'"

*Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 356 (S.D.N.Y. 2014) (quoting *Bank Brussels*,

171 F.3d at 791). "[T]he situs of the injury is the location of the original event which caused the

injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (alteration in

original) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)).  Here, the situs of each Plaintiff's injuries is the location where the vinyl siding was purchased.  *See Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL 4023348, *6 (N.D.N.Y. Sept. 12, 2017) (finding the situs of injury was New Jersey because the plaintiff purchased his car in New Jersey, even though he suffered financial consequences in New York).

Unlike in *Spratley*, Plaintiffs have not alleged exactly *how* they ended up with Ply Gem vinyl siding on their homes.  Without more information, the Court cannot determine where the situs of injury took place.  The Court is particularly skeptical that out-of-state Plaintiffs Morris and Rensland were injured in New York, since they do not allege a New York injury or that their claims arise from any business activity conducted in New York.  *See* Dkt. No. 28-1 at 18.

Additionally, the Complaint does not sufficiently allege that Defendants regularly do business or have persistent conduct in New York.  Plaintiffs make the conclusory statement that "defendants conduct substantial business in this District . . ." without alleging facts to support that statement.  See Dkt. No. 1 at ¶ 16.  As discussed *supra,* the marketing materials, warranties, and advertisements that Plaintiffs rely on extensively in the Complaint are directed at national audiences.  These materials do not establish persistent business or conduct in New York.  *See Abad v. Lorenzo*, 163 A.D.3d 903, 903 (2d Dep't 2018) (finding that promotion of an out-of-state nightclub "through various websites and on social media" that merely imparts information without permitting a business transaction is "passive internet activity" and is generally insufficient to establish personal jurisdiction").  Without more, the Court cannot exercise personal jurisdiction under CPLR § 302(a)(3).

(d) Due Process

If the long-arm statute permits personal jurisdiction, courts then assess whether personal jurisdiction comports with constitutional due process protections. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

The Complaint's bare jurisdictional facts fall far short of showing that Defendants' suit-related conduct creates a substantial connection with New York. However, since the Court does not have personal jurisdiction under New York's long-arm statute, it does not reach the issue of whether jurisdiction would comport with due process.

### 3. Jurisdiction Over Out-of-State Plaintiffs' Claims

Defendants' Motion to Dismiss and Plaintiffs' Opposition to the Motion to Dismiss focus their jurisdictional analysis on how *Bristol-Myers Squibb* and its progeny apply to this case. Thus, the Court will now address *Bristol-Myers Squibb* specifically.

The Court does not have jurisdiction over Plaintiffs' out-of-state claims as they are presently alleged. "[A]s the Supreme Court recently emphasized in further tightening the reins on [the personal jurisdiction analysis], specific jurisdiction is 'confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696, 2017 WL 4217115, *8-9 (E.D.N.Y. Sept. 20, 2017) (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1780). In *Bristol-Myers Squibb*, the Court held that a state court lacked specific jurisdiction under the Fourteenth Amendment because there was no connection between the out-of-state defendant's contacts and the out-of-state plaintiffs' claims.

*Spratley*, 2017 WL 4023348 at *7. Specific jurisdiction requires a "connection between the forum and the specific claims" presented in the lawsuit. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

As Plaintiffs point out, *Bristol-Myers Squibb* "concerns the due process limits on the exercise of specific jurisdiction by a State," and the Supreme Court explicitly left open whether the same logic would extend to federal courts under the Fifth Amendment. *See Bristol-Myers Squibb*, 137 S. Ct. at 1783-84; Dkt. No. 32-1 at 12. Still, *Bristol-Myers Squibb* is instructive on the issues here. The Complaint alleges that Rensland and Morris reside outside of the state of New York, and Defendants are incorporated in Delaware with their corporate headquarters in North Carolina. *See* Dkt. No. 1 at ¶¶ 11-14. The Complaint contains neither (1) facts demonstrating Defendants' contacts with New York, nor (2) facts showing a connection between New York and the out-of-state Plaintiffs' claims. Thus, in light of the Supreme Court's recent decision in *Bristol-Myers Squibb*, the Court does not have jurisdiction over the out-of-state Plaintiffs' claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court finds that Plaintiffs have not met their burden of showing that the Court has jurisdiction over Defendants. As such, the Court hereby,

**ORDERS** that Defendants' Motion to Dismiss (Dkt. No. 28) is **GRANTED**;[5] and the

Court further

  **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

  **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 22, 2018
   Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**

---

[5] In their response to Defendants' Motion to Dismiss, Plaintiffs request that, should the Court grant Defendants' motion, they be granted leave to replead. *See* Dkt. No. 32-1 at 38. Pursuant to Rule 2(A)(ii) of the Individual Rules and Practices of Hon. Mae A. D'Agostino, in order to avoid dismissal of this action, Plaintiffs were required to amend their Complaint prior to the Motion to Dismiss being filed or cross-move to amend their Complaint in conjunction with their response to the motion. *See* Dkt. No. 4 (providing the parties with notice of the Court's Individual Rules and Practices). Plaintiffs did neither of these things. Therefore, the Court appropriately dismisses this action without providing Plaintiffs an opportunity to amend.